NEW ENGLAND THEATRES, INC. *vs.* OLYMPIA THEATRES, INC., & another.

Suffolk.   November 16, 1933. — September 12, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Equity Jurisdiction,* Receivership proceedings. *Corporation,* Receivership, Corporate entity. *Attachment. Jurisdiction. Fraud. Equity Pleading and Practice,* Decree, Appeal.

A decree, entered in a suit in equity against a corporation after the appointment of a receiver of the defendant, whereby in substance a vacation of the decree making such appointment and the dismissal of the bill were refused and a ruling was made that the court had jurisdiction to appoint the receiver, was so far final in its nature that an appeal lay from it by a party to the suit who opposed the receivership.

The general equity jurisdiction of the Superior Court includes the power to appoint a receiver of a solvent domestic corporation, for the pur-

pose of preserving its assets and for other appropriate purposes, at the instance of a contract creditor of the corporation who has not reduced his claim to judgment, where the corporation makes no objection to the receivership and there is no fraud nor collusion in procuring it.

The question, whether such an appointment should be made, rests in sound judicial discretion, to be exercised only with circumspection and only in cases where otherwise there would be wasting and loss of property which ought to be made available for payment of the debts of the corporation and which cannot be conserved in any other way so satisfactorily as by the appointment of a receiver. Per RUGG, C.J.

The general jurisdiction in equity to appoint receivers is not narrowed by G. L. (Ter. Ed.) c. 156, § 51.

In receivership proceedings brought in 1933 by a corporation against two domestic corporations, it appeared that the plaintiff was a simple contract creditor of one of the defendants, which owned the capital stock of the other defendant and had control of it; that the relations of the defendants were such that the solvency of the one depended upon the solvency of the other; that the plaintiff and both defendants were subsidiaries of and were controlled by a fourth corporation; that financial difficulties of the parent corporation had affected the defendants adversely; that attachments of the defendants' property had been made and others were threatened; that such attachments would result in an impairment of their assets; that, although both defendants were solvent, they owed large debts and had not sufficient quick assets to meet their obligations in the ordinary course of business; that, through preservation of their assets and continuation of their businesses and efficient management thereof, they would remain solvent; that the receivership was necessary for that purpose; that, by prearrangement between the plaintiff and the defendants, the defendants consented to the appointment of a receiver; and that full disclosure of all the facts was made to the court and no fraud nor collusion was practiced by the parties. There was nothing to show that the four corporations were not genuine and separate entities, each carrying on its own distinct business. A receiver of both defendants was appointed. *Held*, that

(1) The circumstances were not such that the corporate entities should be disregarded and the plaintiff and the defendants treated as identical;

(2) The prevalent general financial and industrial depression was a factor to be given weight in determining whether the case was a suitable one for the appointment of a receiver;

(3) The mere fact that the parties coöperated in procuring the appointment of a receiver for a proper purpose did not show fraud in the proceedings;

(4) The facts warranted the appointment of a receiver.

A creditor of the defendants, who intervened to oppose the appointment of a receiver in the proceedings above described, had no superior advantage in opposing it by virtue of the fact that he had an attachment on the defendants' property at the time of the appointment, especially where the decree of appointment preserved the validity of his lien.

The jurisdiction of the court to entertain the proceedings above described was not impaired by the fact that the intervener's attachment was upon process which had issued from the District Court of the United States.

There was no merit in an appeal in a suit in equity from the denial of a motion by the appellant to strike out of the trial judge's findings a recital that "by consent of the parties" certain statements by counsel were considered as though they "had been received as evidence," where the judge, in denying the motion, stated that use of such statements to aid in making his findings was in accordance with an understanding between the parties and himself at the hearing.

BILL IN EQUITY, filed in the Superior Court on February 1, 1933, and afterwards amended, for the appointment of a receiver of the defendants.

A decree appointing temporary receivers was entered by order of *Qua*, J. Further proceedings, material facts found by *Whiting*, J., and decrees entered by his order, from which appeals were taken by interveners, are described in the opinion. The evidence at the hearing by *Whiting*, J., was reported.

*G. S. Ryan*, for the interveners.

*J. J. Kaplan*, (*B. A. Trustman* & *L. B. Newman* with him,) for the plaintiff.

*Lee M. Friedman*, (*P. A. Atherton* with him,) for the defendants.

RUGG, C.J. This is an appeal by intervening petitioners from two decrees; one, so far as now assailed, in substance and effect overruled a demurrer, denied a petition to dissolve a decree appointing receivers, and continued the receiverships; the other (termed "order" but in effect an interlocutory decree) denied a motion to correct the record. The plaintiff is a corporation organized under the laws of Delaware, having a usual place of business in Boston. The two defendants are corporations organized under the laws of this Commonwealth, each having its usual place of business in Boston. The allegations of the bill as amended, filed on February 1, 1933, in brief are that the defendant Olympia Theatres, Inc., is indebted to the plaintiff and to others in large sums; that the defendant Olympia Operating Company is indebted to Olympia Theatres, Inc., in large

sums, and the solvency of the latter depends to a substantial extent on the continued operation of the Olympia Operating Company; that the defendants, although solvent, are without sufficient quick assets to carry on business, are unable to borrow money for that purpose, and cannot meet their liabilities as they mature; that attachments of their property have been made upon disputed claims, and other attachments are threatened; that an attempt by the plaintiff to enforce its claims at law would precipitate similar actions by others and would result in the waste and dissipation of the defendants' assets; and that, if a receiver were appointed, the defendants would be able to pay their liabilities. On the day the bill was filed, each defendant answered admitting its allegations and consenting to the appointment of receivers. A decree was entered appointing temporary receivers and notice was issued to all known stockholders, creditors and lessors of the defendants to show cause why the receivership should not be continued. Shortly thereafter, a petition for leave to intervene in behalf of itself and all other like attachment creditors of the defendants was filed by E. M. Loew's, Inc., a corporation organized under the laws of this Commonwealth, setting out that it was an attaching creditor of the defendants by writ issuing out of the District Court of the United States for this district in actions under the antitrust laws of the United States, and challenging the jurisdiction of the court to appoint receivers and alleging that the proceedings were collusive in order to prevent the attachment by the intervener. Subsequently, other corporations and E. M. Loew were allowed to join as copetitioners and cointerveners with E. M. Loew's, Inc.

The case was heard by a judge of the Superior Court. Three questions were involved: (1) whether the court had jurisdiction to appoint receivers, (2) whether the facts justified the appointment of receivers, and (3) whether there was such collusion in the appointment of the receivers that they should be discharged and the bill dismissed. The trial judge filed findings of fact, rulings, and order for decree. Those findings, so far as material to the grounds of this

decision, are these: The plaintiff and the defendants are subsidiaries of the Paramount Publix Corporation, one of the largest corporations in the country engaged in the production, distribution and exhibition of moving pictures. In New England alone it controlled the showing of such pictures in more than two hundred theatres, operated mainly through the plaintiff and the defendants. It owned all the stock in the plaintiff. Its officers and employees constituted all the directors and officers of the plaintiff and a majority of those of Olympia Theatres, Inc., but a substantial minority represented other interests. The latter corporation wholly controls, through ownership of all its capital stock, the other defendant. The relations of the two defendants are so close and complex that the solvency of one depends upon the solvency of the other. Receivership of one should include the other. All the theatres owned and controlled by the plaintiff and defendants were managed from a central office in Boston through still another corporation owned by the Paramount Publix Corporation. Rent due for many theatres and interest on mortgages were unpaid with respect to theatres of the defendants, and these creditors were disturbed and were pressing for payment of the sums due. Large amounts of money had been paid in fitting up some of the theatres, which would be lost if the lease were terminated. On January 26, 1933, a receiver was appointed in New York for the Paramount Publix Corporation. It could no longer afford aid to the defendants. This precipitated financial difficulties for the defendants. The intervener and other creditors of its class, on January 30, 1933, brought actions in the Federal court and on February 1, 1933, made attachments. Knowledge of these actions quickly reached other creditors of the defendants and other actions were threatened. These well might result in closing the theatres and destroying their good will and wasting many valuable assets.

While each defendant owed large sums of money, each was solvent, but neither had sufficient quick assets to continue business or to meet its obligations in the ordinary course of business. If the assets were conserved and the

corporations efficiently managed, and their business continued, there would be sufficient to pay the debts and leave a substantial sum for the stockholders. The business could not be carried on except by a receiver, and a receivership was necessary to preserve the assets of the defendants. The plaintiff was a creditor of the defendant Olympia Theatres, Inc., to the extent of more than $350,000, and the Paramount Publix Corporation to the extent of more than $4,000,000. The plaintiff had made no demand upon that defendant for payment of its indebtedness prior to filing its bill. The object of this suit is not to collect its indebtedness but to conserve the assets of the defendants. The procedure to be followed in order to get receivers appointed was agreed upon by the parties before the suit was instituted and was carried out except as changed by the court. No "fraud or deceit was practised upon the court in connection with the appointment" of the receivers. Counsel for the plaintiff and for the defendants acted with propriety for the purpose of preserving the properties of the defendants so far as permitted by law and "did nothing illegal or unethical in the matter." There was no collusion in a sense importing moral obliquity or any secret agreement for a wrongful purpose. Disclosure of the whole situation was made to the judge. There were full acquiescence and agreement between the representatives of the Paramount Publix Corporation and its subsidiaries in an attempt to work out a plan for saving the assets of the plaintiff and the defendants. Many parties were represented and heard, but the intervening petitioner E. M. Loew's, Inc., alone by filing a petition objected to the continuance of the receivership.

The trial judge upon the foregoing facts found by him refused to vacate the decree appointing receivers or to dismiss the bill, and ruled that the court had jurisdiction to appoint receivers. These conclusions were embodied in substance and effect in a decree entered on May 31, 1933, continuing the receiverships. That decree was so far final in its nature as to be appealable to this court. *Cambridge Savings Bank* v. *Clerk of Courts*, 243 Mass. 424, 427.

The evidence is reported in full. It consisted largely of oral testimony. It has been examined with care. It amply supports the findings of fact made by the trial judge. Those findings, therefore, cannot be pronounced plainly wrong. Under the familiar rule they must be accepted as true and made the basis of the decision. *Lindsey* v. *Bird,* 193 Mass. 200. *Curtis* v. *First Church in Charlestown,* 285 Mass. 73, 76.

The court had jurisdiction as a branch of its general chancery powers to appoint receivers of a domestic corporation for the conservation of its assets and other appropriate purposes. It was empowered to take this action at the instance of a simple contract creditor who had not reduced his claim to judgment, provided the defendants made no objection. That was expressly decided in *Hampden National Bank* v. *Hampden Railroad,* 246 Mass. 404. The plaintiff in that case was a simple contract creditor. The defendant, through counsel and pursuant to vote of its stockholders and directors, appeared in open court and assented to the appointment of a receiver. It was held that the Superior Court had jurisdiction to consider the case and to appoint a receiver as a part of its general jurisdiction in equity. Supporting authorities are there collected. In *Falmouth National Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 568, the discussion proceeded upon the theory that the court had jurisdiction to appoint a receiver but that the facts did not make out a case for such action. There are numerous cases in our reports where it appears from the papers that receivers have been appointed for corporations at the instance of creditors who have not reduced their claims to judgment, without any challenge as to jurisdiction. *Merrill* v. *Cape Ann Granite Co.* 161 Mass. 212. *Boston Penny Savings Bank* v. *Boston & Maine Railroad,* 244 Mass. 488. *Vorenberg* v. *American House Hotel Co.* 246 Mass. 108. *Boucher* v. *Hamilton Manuf. Co.* 259 Mass. 259. *Turner* v. *State Wharf & Storage Co.* 263 Mass. 92. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209. *International Paper Co.* v. *Priscilla Co.* 281 Mass. 22. These decisions are of persuasive weight since it is the duty of the court to take

notice of its want of jurisdiction even though not raised by the parties. *Eaton* v. *Eaton*, 233 Mass. 351, 364. *Maley* v. *Fairhaven*, 280 Mass. 54, 56, and cases collected. *Rex* v. *Dennis*, [1924] 1 K. B. 867. The decisions of the Federal courts are to the same effect. It was said in *Re Metropolitan Railway Receivership*, 208 U. S. 90, at 110: "the consent of the defendant to the appointment of receivers, without setting up the defense that the complainants were not judgment creditors who had issued an execution which was returned unsatisfied, in whole or in part, amounted to a waiver of that defense." *United States* v. *Butterworth-Judson Corp.* 269 U. S. 504, 513. *Michigan* v. *Michigan Trust Co.* 286 U. S. 334, 345. *Shapiro* v. *Wilgus*, 287 U. S. 348, 356. *Kingsport Press, Inc.* v. *Brief English Systems, Inc.* 54 Fed. Rep. (2d) 497, 499. To the same point see opinion by Lurton, Circuit Judge, in *Horn* v. *Pere Marquette Railroad*, 151 Fed. Rep. 626, 633. The statement in *Harkin* v. *Brundage*, 276 U. S. 36, 52, was directed to facts where there was collusion in securing the appointment of receivers.

Jurisdiction to appoint a receiver of a corporation upon the petition of a simple contract creditor cannot be doubted in this Commonwealth. Nevertheless, such appointment rests in sound judicial discretion to be put forth only with circumspection. It should not be exercised except in cases where otherwise there would be wasting and loss of property which ought to be made available for payment of the debts of the corporation and which cannot be conserved in any other way so satisfactorily as by the appointment of a receiver. *Falmouth National Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 568.

The general jurisdiction in equity to appoint receivers is not cut down by G. L. (Ter. Ed.) c. 156, § 51. That section does not purport to cover the entire subject of receiverships of corporations. It was originally enacted with respect to the winding up of corporations whose charters had expired. General equity power to appoint receivers as distinguished from statutory authority is recognized in *Pond* v. *Framingham & Lowell Railroad*, 130 Mass. 194, and *Falmouth*

*National Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 568.

The appointment of receivers for both defendants was warranted upon the facts found. *Re Metropolitan Railway Receivership*, 208 U. S. 90, 96, 111.

There was no fraud nor collusion in securing the appointment of the receivers. The findings of fact are categorical to this effect. The circumstances do not negative nor dull the edge of this finding. This is not an instance where the corporate entities can be disregarded and the plaintiff and the defendants be treated as identical or as agents of the Paramount Publix Corporation. There is nothing to indicate that all these corporations were not genuine and separate persons having independent capital. So far as appears, each carried on a distinct business in its own field. Each contracted its own debts and received its own revenue. Each occupied a well defined field in providing moving pictures to suit the public taste. For aught that appears, no one of them was organized to meet a legal exigency as distinguished from a commercial opportunity. Ownership of all the stock in several corporations by one person does not create a single unit or justify a disregard of separate corporations. All the facts must be considered and due weight be given to each. Different corporations usually are distinct entities in law. It is only where the corporation is a sham, or is used to perpetrate deception to defeat a public policy, that it can be disregarded. Facts not infrequently exist which warrant or require that courts look through corporate forms to the dominating personality behind them in order to prevent fraud, to protect the public, or to accomplish some essential justice. *Hallett* v. *Moore*, 282 Mass. 380, 399, and cases collected. *Berry* v. *Old South Engraving Co.* 283 Mass. 441, 451. The case at bar on the facts disclosed does not fall within that class.

Full disclosure of all facts was made to the judge when the receivers were appointed. The facts alleged in the bill were substantially true. The debts of the defendants were actual debts. An emergency in the conduct of the moving picture theatres of the defendants existed. Finan-

cial disaster appeared to be at hand. Loss of assets seemed to be inevitable. The closing of the theatres would greatly impair, if not destroy, the good will built up through years of successful operation. These facts have not been controverted. The finding is that by preserving the continuous operation of the moving picture theatres of the defendants waste and loss of their assets would be prevented, their debts paid and something salvaged for the stockholders. Receivership is a recognized procedure. Cooperation among the parties chiefly interested to accomplish a proper end is not a badge of fraud. The general financial and industrial depression now prevalent was a factor to be given weight in determining whether the case was a suitable one for the appointment of a receiver. The appointment of receivers was justified in the light of all the conditions. The case at bar on its controlling facts is distinguishable from *Shapiro* v. *Wilgus*, 287 U. S. 348.

The circumstance that the interveners had attachments upon the property of the defendants at the time of the appointment of the receivers gives them no superior advantage in challenging the receivership. The right to establish the validity of their liens acquired by such attachments, if any, is preserved to them by a clause in the decree from which they have appealed. G. L. (Ter. Ed.) c. 223, §§ 130, 131. The defendants and some of the interveners are domiciled in this Commonwealth. The ordinary jurisdiction in equity of the courts of the Commonwealth over its own corporate creatures doing business here is not impaired by an attachment of some of their property upon processes issuing out of the Federal court in the absence of a supervening and binding act of the Congress to that effect. There is no such law governing the case at bar. See U. S. Rev. Sts. §§ 915, 933. One object of receivership proceedings is to secure equality of treatment among creditors so far as permissible under the law. *Second National Bank of Pittsburgh* v. *J. C. Lappe Tanning Co.* 198 Mass. 159.

There is no merit in the appeal by the interveners from the denial of their motion to correct the record. That

motion was to strike out from the findings the statement that "By consent of the parties the opening is considered as if the statements therein made had been received as evidence." The trial judge, in making the order over-ruling the motion, stated further that use of the opening to aid in making his findings was in accordance with an understanding between parties and himself at the hearing. These were findings within the personal knowledge of the trial judge and must be taken as true. There is nothing in the record to overcome their force. *Boston Safe Deposit & Trust Co.* v. *Wickham*, 254 Mass. 471, 473.

All the arguments of the interveners have been considered. Further discussion is not necessary.

*Decrees affirmed.*